UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| EMPLOYERS MUTUAL | * | CIVIL ACTION NO. 3:11cv-79- |
| CASUALTY COMPANY | * | JJB-CN |
| | * | |
| VERSUS | * | |
| | * | JUDGE JAMES J. BRADY |
| JVV CONSULTING-CONSTRUCTION | * | |
| MANAGEMENT, L.L.C. | * | |
| ANTHONY  R. VIGILOTTI, AND | * | MAG. JUDGE CHRISTINE |
| TENNILLE P. VIGILOTTI | * | NOLAND |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**May It Please The Court:**

**I.    INTRODUCTION**

Employers Mutual Casualty Company ("EMC") submits this memorandum in support

of its motion for summary judgment in its favor and against JVV Consulting-Construction

Management, L.L.C. ("JVV"), Anthony R. Vigilotti, and Tennille P. Vigilotti (collectively

"Defendants").  As set forth below, Defendants executed a binding indemnity agreement

wherein they agreed to jointly and severally  indemnify EMC for all losses, past and future,

including but not limited to costs, expenses, consultants' fees, and attorneys' fees, incurred

by EMC by reason of having executed payment and performance bonds on behalf of JVV and in enforcing Defendants' obligations under the indemnity agreement.  Defendants Anthony Vigilotti and Tennille Vigilotti also made knowingly false written representations regarding their personal financial condition with the intent to deceive EMC, in order to induce EMC to execute payment and performance bonds on behalf of JVV.  EMC reasonably relied on those representations in choosing to execute bonds on behalf of JVV.  EMC has sustained, and continues to sustain, losses and expenses by reason of having executed said bonds on behalf of JVV and in enforcing the terms of the indemnity agreement, for which Defendants obligated themselves to indemnify EMC.  Defendants further obligated themselves to post collateral to be held by EMC to secure EMC from such losses, and have failed to post such security despite demand by EMC.

Defendants have failed to perform their obligations under the indemnity agreement and EMC is entitled to judgment, as a matter of law: (1) in its favor and against Defendants, jointly, severally, and *in solido*, in the amount of $1,820,338.39, representing EMC's net losses and expenses incurred as of December 13, 2011 by reason of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under the indemnity agreement; (2) ordering Defendants to specifically perform their collateral security obligations under the indemnity agreement by placing EMC in funds equal to $470,284.38 as collateral security; (3) finding that EMC's losses were the result of its reasonable reliance on the materially false, written representations made by defendants Anthony Vigilotti and Tennille Vigilotti

concerning their financial condition; and (4) reserving EMC's right to seek all additional

losses and expenses, including but not limited to all costs, consultants' fees, and attorneys'

fees, incurred by EMC by reason of having executed bonds on behalf of JVV and in

enforcing Defendants' obligations under the indemnity agreement.

## II.   FACTUAL BACKGROUND

EMC is a surety company that issues payment and performance bonds and stands as

surety for select contractors.[1]   JVV was a contractor in the business of performing

construction work that sought payment and performance bonds from EMC.[2]   Because EMC

was not willing to assume the risk that execution of bonds on behalf of JVV would result in

a loss to EMC, EMC required an indemnity agreement before it would execute such bonds.[3]

### A.   THE GENERAL AGREEMENT OF INDEMNITY

On or about June 26, 2009, JVV, as principal, and Anthony Vigilotti and Tennille

Vigilotti, individually, executed a General Agreement of Indemnity in favor of EMC ( the

"GAI").[4]   By executing the GAI, Defendants agreed to be bound by its terms jointly and

severally.[5]   Defendants agreed to the following indemnity provisions of the GAI:

### INDEMNITY

[Defendants] shall exonerate, indemnify, and keep indemnified [EMC] from

---

[1] Affidavit of Linda Hoffman paragraph 2, attached as Exhibit "A."

[2] *See* Pl.'s Compl. [Rec. Doc. 1] ¶ V; Defs.' Answer [Rec. Doc. 18] ¶ 7.

[3] *See* Ex. A ¶ 4.

[4] *See id.* ¶ 5.  A copy of the GAI is attached at Tab "1" to Exhibit A.

[5] *See id.* at Tab 1, § 13.

and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which [EMC] may sustain and incur: **(1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of [JVV] or the [Defendants] to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement**.  Payment by reason of the aforesaid causes shall be made to [EMC] by the [Defendants] as soon as liability exists or is asserted against [EMC] whether or not [EMC], shall have made any payment therefor.

* * *

[EMC] may pay or compromise any claim, demand, suit, judgment or expense arising out of such bond or bonds and any such payment or compromise shall be binding upon the [Defendants] and included as a liability, loss or expense covered by this Indemnity Agreement.  **In the event of any such payment or compromise by [EMC], an itemized statement thereof sworn to by an officer of [EMC], or the voucher or vouchers of other evidence of such payment or compromise, shall be prima facia [sic] evidence of the fact and amount of the liability of the [Defendants] under this agreement**.[6]

Defendants also obligated themselves to deposit collateral security with EMC upon

EMC's demand pursuant to Section 11 of the GAI, which provides:

### RIGHT TO DEMAND RESERVE

If for any reason [EMC] shall be required or at its option and in its sole discretion shall deem it necessary to set up a reserve in any amount . . . the [Defendants], within 10 calendar days after mailing by [EMC] of written demand by registered or certified mail shall deposit with [EMC], cash or collateral in the amount of such reserve and every increase thereof, to be held by [EMC] as collateral with the right to use any such funds or any part thereof, at any time, without notice to the [Defendants] in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees, engineers' fees, investigative charges and other disbursements and/or expenses in connection with said Bond or Bonds or in anticipation of loss thereunder.[7]

---

[6] *Id.* at Tab 1, § 2 (emphasis added).

[7] *Id.* at Tab 1, § 11.

4

In addition to executing the GAI in favor of EMC, defendants Anthony Vigilotti and Tennille Vigilotti provided EMC a document entitled "Confidential Personal Financial Statement," bearing the signatures of Anthony Vigilotti and Tennille Vigilotti, in order to induce EMC to execute payment and performance bonds on behalf of JVV.[8]   The Confidential Personal Financial Statement made certain representations concerning the Vigilottis' personal financial condition, including but not limited to real estate wholly owned by them.[9]   EMC relied on the representations made in the Confidential Personal Financial Statement in deciding to execute bonds on behalf of JVV.[10]   However, the representations made to EMC through the Confidential Personal Financial Statement were materially false in one or more respects.   The single largest asset listed on the Confidential Personal Financial Statement, wholly owned real estate valued at $320,000.00 and comprising over two thirds of all assets claimed by the Vigilottis, was not actually owned by the Vigilottis.[11]   The personal residence that the Vigilottis represented to EMC was owned by them was instead owned by Anthony Vigilotti's father, Ralph Vigilotti.[12]

---

[8] *See id.* ¶ 7.  A copy of the Confidential Personal Financial Statement is attached at Tab "2" to Exhibit A.  Defendants have admitted to the existence of the Confidential Personal Financial Statement.  *See* Pl.'s First Supplemental & Am. Compl. [Rec. Doc. 16] ¶ LXI; Defs.' Answer to First Supplemental & Am. Compl. [Rec. Doc. 19] ¶ 5.

[9] *See* Ex. A at Tab 2.

[10] *See id.* ¶¶ 8, 15, 23, 33, 39, 47.

[11] *See id.* at Tab 2.  A copy of the Act of Sale transferring the property to Ralph Vigilotti on December 13, 2004 is attached as Exhibit "B;" a copy of the Act of Sale transferring the property from Ralph Vigilotti on May 27, 2011 is attached as Exhibit "C."

[12] *See* Ex. B; Ex. C.

5

### B.    THE PROJECTS, CLAIMS, AND EMC'S BOND LOSSES

EMC relied on the representations made in the Confidential Personal Financial Statement, as well as the terms of the GAI, in choosing to execute, as surety, payment and performance bonds in connection with multiple construction projects on which JVV acted as the general contractor.[13]

### 1.    Plaquemine High School New Field House

On or about October 20, 2009, JVV contracted with the Iberville Parish School Board to serve as general contractor on a project known as the "Plaquemine High School New Field House" (the "Field House Project").[14]  In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 13 05 ("Bond S38 13 05"), in the penal sum of $1,710,000.00, naming JVV as principal and the Iberville Parish School Board as obligee.[15]

Although the Field House Project was substantially complete, the Iberville Parish School Board made demand on EMC under Bond S38 13 05 to complete the Field House Project and to satisfy payment bond claims on the Field House Project.[16]  Separately, numerous subcontractors and suppliers made demand on EMC under Bond S38 13 05 for

---

[13] *See* Ex. A ¶¶ 8, 15, 23, 33, 39, 47.

[14] *See id.* ¶ 14.

[15] *See id.* ¶ 15.  A copy of Bond S38 13 05 is attached at Tab "4" to Exhibit A.

[16] A copy of the recorded Certificate of Substantial Completion for the Field House Project is attached in relevant part as Exhibit "D;" *see also* Ex. A ¶ 16.

payment for work performed on and/or materials furnished to the Field House Project.[17]

As of December 13, 2011, EMC has sustained losses of $51,423.00 in connection with its performance obligations and losses of $115,846.59 in connection with resolution of payment claims on the Field House Project.[18]   EMC has also incurred expenses, costs, consultants' fees, and attorneys' fees by reason of having executed Bond S38 13 05 on behalf of JVV.[19]   As a result of EMC's equitable subrogation to, and priority security interest in, the remaining Field House Project contract balances, and also as a result of EMC causing the Field House Project to be completed, EMC has received $183,861.87 from the Iberville Parish School Board.[20]

### 2. Plaquemine High School Administration and Gym Renovations

On or about April 19, 2010, JVV contracted with the Iberville Parish School Board to serve as general contractor on a project known as the "Plaquemine High School Administration and Gym Renovations" (the "Admin/Gym Project").[21]   In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 13 26 ("Bond S38 13 26"), in the penal sum of $1,220,000.00,

---

[17] *See* Ex. A ¶ 17.

[18] *See id.* ¶¶ 18-19.

[19] *See id.* ¶ 20.

[20] *See id.* ¶ 21.

[21] *See id.* ¶ 22.

naming JVV as principal and the Iberville Parish School Board as obligee.[22]

On or about January 13, 2011, the Iberville Parish School Board terminated JVV's contract for the Admin/Gym Project.[23]  Thereafter, the Iberville Parish School Board made demand on EMC under Bond S38 13 26 to complete the Admin/Gym Project and to satisfy payment bond claims on the Admin/Gym Project.[24]  A Takeover Agreement was entered into between EMC and the Iberville Parish School Board, wherein EMC undertook to complete the Admin/Gym Project and the Iberville Parish School Board dedicated the remaining contract balances to the completion of the Admin/Gym Project.[25]  Separately, numerous subcontractors and suppliers made demand on EMC under Bond S38 13 26 for payment for work performed on and/or materials furnished to the Admin/Gym Project.[26]

As of December 13, 2011, EMC has sustained losses of $508,440.95 in connection with its performance obligations and losses of $399,248.20 in connection with resolution of payment claims on the Admin/Gym Project.[27]  EMC has received $225,491.43 in contract balances from the Iberville Parish School Board as a result of causing the Admin/Gym Project to be completed.[28]  EMC has also incurred expenses, costs, consultants' fees, and

---

[22] *See id.*¶ 23.  A copy of Bond S38 13 26 is attached at Tab "5" to Exhibit A.

[23] A copy of the recorded Notice of Termination of JVV from the Admin/Gym Project is attached as Exhibit "E."

[24] *See* Ex. A ¶ 24.

[25] *See id.* ¶¶ 25-26.

[26] *See id.* ¶ 27.

[27] *See id.* ¶¶ 28, 30.

[28] *See id.* ¶ 29.

attorneys' fees on the Admin/Gym Project by reason of having executed Bond S38 13 26 on behalf of JVV.[29]

### 3.    Zachary High School New Drives and Parking

On or about June 3, 2010, JVV contracted with the Zachary Community School Board to serve as general contractor in connection with a project referred to as "Zachary High School New Drives and Parking" (the "Zachary Project").[30]  In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 22 38 ("Bond S38 22 38"), in the penal sum of $380,000.00, naming JVV as principal and the Zachary Community School Board as obligee.[31]

Although the Zachary Project was substantially complete, the Zachary Community School Board made demand on EMC under Bond S38 22 38 to satisfy payment bond claims on the Zachary Project.[32]  Separately, numerous subcontractors and suppliers made demand on EMC under Bond S38 22 38 for payment for work performed on and/or materials furnished to the Zachary Project.[33]

As of December 13, 2011, EMC has sustained losses in the amount of $161,591.68

---

[29] *See id.* ¶ 31.

[30] *See id.* ¶ 32.

[31] *See id.* ¶ 33.  A copy of Bond S38 22 38 is attached at Tab "6" to Exhibit A.

[32] *See id.* ¶ 34.

[33] *See id.* ¶ 35.

in connection with resolution of payment claims on the Zachary Project.[34]   EMC has also incurred expenses, costs, consultants' fees, and attorneys' fees on the Zachary Project by reason of having executed Bond S38 22 38 on behalf of JVV.[35]

### 4.      Gray's Creek Elementary Multi-Purpose Building

On or about July 12, 2010, JVV contracted with the Livingston Parish Public Schools to serve as general contractor on a project known as the "Gray's Creek Elementary Multi-Purpose Building" (the "Gray's Creek Project").[36]   In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 22 40 ("Bond S38 22 40"), in the penal sum of $484,000.00, naming JVV as principal and the Livingston Parish Public Schools as obligee.[37]

On or about January 27, 2011, the Livingston Parish Public Schools terminated JVV's contract for the Gray's Creek Project.[38]   Thereafter, the Livingston Parish Public Schools made demand on EMC under Bond S38 22 40 to complete the Gray's Creek Project and to satisfy payment bond claims on the Gray's Creek Project.[39]   In satisfaction of its performance obligations under Bond S38 22 40, EMC entered into an agreement with the Livingston

---

[34] *See id.* ¶ 36.

[35] *See id.* ¶ 37.

[36] *See id.* ¶ 38.

[37] *See id.* ¶ 39.   A copy of Bond S38 22 40 is attached at Tab "7" to Exhibit A.

[38] A copy of the recorded Notice of Termination of JVV from the Gray's Creek Project is attached as Exhibit "F."

[39] *See* Ex. A ¶ 40.

Parish Public Schools arranging for the completion of the Gray's Creek Project.[40] Separately, numerous subcontractors and suppliers made demand on EMC under Bond S38 22 40 for payment for work performed on and/or materials furnished to the Gray's Creek Project.[41]

As of December 13, 2011, EMC has sustained losses of $37,852.99 in connection with its performance obligations and losses of $118,827.93 in connection with resolution of payment claims on the Gray's Creek Project.[42]   EMC has also incurred expenses, costs, consultants' fees, and attorneys' fees on the Gray's Creek Project by reason of having executed Bond S38 22 40 on behalf of JVV.[43]

### 5.    New Fire Station No. 10

On or about July 29, 2010, JVV contracted with Fire Protection District #4 to serve as general contractor on a project known as the "New Fire Station No. 10" (the "New Fire Station Project").[44]   In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 22 48 ("Bond S38 22 48"), in the penal sum of $848,000.00, naming JVV as principal and Fire Protection District #4 as obligee.[45]

---

[40] *See id.* ¶ 41.

[41] *See id.* ¶ 42.

[42] *See id.* ¶¶ 43-44.

[43] *See id.* ¶ 45.

[44] *See id.* ¶ 46.

[45] *See id.* ¶ 47.  A copy of Bond S38 22 48 is attached at Tab "8" to Exhibit A.

On or about January 27, 2011, Fire Protection District #4 terminated JVV's contract for the New Fire Station Project.[46]  Thereafter, Fire Protection District #4 made demand on EMC under Bond S38 22 48 to complete the New Fire Station Project and to satisfy payment bond claims on the New Fire Station Project.[47]  In satisfaction of its performance obligations under Bond S38 22 48, EMC entered into an agreement with Fire Protection District #4 arranging for the completion of the New Fire Station Project.[48]  Separately, numerous subcontractors and suppliers made demand on EMC under Bond S38 22 48 for payment for work performed on and/or materials furnished to the New Fire Station Project.[49]

As of December 13, 2011, EMC has sustained has losses of $271,778.71 in connection with its performance obligations and losses of $111,998.34 in connection with resolution of payment claims on the New Fire Station Project.[50]  EMC has also incurred expenses, costs, consultants' fees, and attorneys' fees on the New Fire Station Project by reason of having executed Bond S38 22 48 on behalf of JVV.[51]

### 6.    The LTC-Ascension Campus Project

On or about December 1, 2009, the State of Louisiana, Division of Administration contracted with JVV to serve as general contractor on a project known as "Hurricane Gustav

---

[46] A copy of the recorded Notice of Termination of JVV from the New Fire Station Project is attached as Exhibit "G."

[47] *See* Ex. A ¶ 48.

[48] *See id.* ¶ 49.

[49] *See id.* ¶ 50.

[50] *See id.* ¶¶ 51-52.

[51] *See id.* ¶ 53.

Related Permanent Repairs, Louisiana Technical College, Ascension Campus" (the "LTC-Ascension Project").[52]   In reliance on the GAI and the representations made in the Confidential Personal Financial Statement, and at JVV's request, EMC executed, as surety, a Louisiana Public Works Act payment and performance bond, bond number S38 13 01 ("Bond S38 13 01"), in the penal sum of $277,000.00, naming JVV as principal and the State of Louisiana, Division of Administration as obligee.[53]

Although the LTC-Ascension Project was complete, several subcontractors and suppliers made demand on EMC under Bond S38 13 01 for payment for work performed on and/or materials furnished to the LTC-Ascension Project.[54]   As of December 13, 2011, EMC has sustained losses in the amount of $22,822.90 in connection with resolution of payment claims on the LTC-Ascension Project.[55]  EMC has also incurred expenses, costs, consultants' fees, and attorneys' fees on the LTC-Ascension Project by reason of having executed Bond S38 13 01 on behalf of JVV.[56]

## C.    EMC'S COLLATERAL DEMAND

Pursuant to Paragraph 11 of the GAI, EMC deemed it necessary to set a reserve and made demand for collateral security of $470,284.38 on Defendants by certified letters dated

---

[52] *See id.* ¶ 54.

[53] *See id.* ¶ 55.  A copy of Bond S38 13 01 is attached at Tab "9" to Exhibit A.

[54] *See id.* ¶ 56.

[55] *See id.* ¶ 57.

[56] *See id.* ¶ 58.

November 19, 2010.[57]   The GAI obligates Defendants to deposit with EMC acceptable collateral security within ten days of mailing of the written demand.[58] Defendants have failed to respond to EMC's demand for collateral, and have not posted collateral with EMC.[59]

### D.   EMC'S EXPENSES

In addition to the losses EMC sustained in resolving payment and performance claims, EMC has incurred significant expenses, costs, consultants' fees, and attorneys' fees by reason of having executed payment and performance bonds on behalf of JVV and in enforcing the GAI.  As of December 13, 2011, the expenses, costs, consultants' fees, and attorneys' fees incurred by EMC in investigating, defending, and resolving the numerous claims asserted against EMC under the payment and performance bonds executed on behalf of JVV and in enforcing Defendants' indemnity obligations has reached $429,860.40.[60] EMC continues to expend sums, including but not limited to losses, expenses, costs, consultants' fees, and attorneys' fees, by reason of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under the GAI.[61]

Pursuant to Section 2 of the GAI, the Affidavit of Linda Hoffmann is *prima facie* evidence of both the fact and the amount of Defendants' liability to EMC.[62]   As stated

---

[57] *See id.* ¶ 11.  A copy of the collateral demand letters sent to Defendants is attached at Tab "3" to Exhibit A.

[58] *See id.* at Tab 1, § 11.

[59] *See id.* ¶ 12.

[60] *See id.* ¶ 60.

[61] *See id.* ¶ 64.

[62] *See id.* at Tab 1, § 2.

therein, as of December 13, 2011, EMC has sustained losses, costs, expenses, consultants'

fees, and attorney's fees totaling $2,229,691.69 by reason of having executed bonds on

behalf of JVV and in enforcing Defendants' obligations under the GAI.[63]  EMC has received

$409,353.30 in contract balances as a result of its equitable subrogation, priority security

interests, and/or contractual interests in those funds.[64]  Defendants are entitled to a credit for

such funds as EMC has already received, and are entitled to a credit against EMC's future

losses to the extent EMC is able to further recover any contract balances.  After applying a

credit for the contract balances received by EMC, EMC's net losses and expenses by reason

of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under

the GAI total $1,820,338.39 as of December 13, 2011.[65]  Despite the losses incurred by EMC

and its demands for collateral, Defendants have failed to fulfill their obligations under the

GAI, and this matter is ripe for summary judgment.

## III.   LAW AND ARGUMENT

### A.   THE APPLICABLE LAW

This action was brought pursuant to this court's diversity jurisdiction under 28 U.S.C.

§ 1332.  Federal courts sitting in diversity apply Federal procedural law, but are *Erie*-bound

to apply the substantive law of the forum state.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*,

313 U.S. 487 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).  Here, the applicable

---

[63] *See id.* ¶ 61.

[64] *See id.* ¶ 62.

[65] *See id.* ¶ 63.

state law is that of Louisiana.

**B.     SUMMARY JUDGMENT IS APPROPRIATE**

Summary judgment under Federal Rule of Civil Procedure 56(c) shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A grant of summary judgment is proper when the mover demonstrates that "there is no genuine dispute as to any material fact and [it] is entitled  to judgment as a matter of law." *Wiltz v. Bayer Cropscience, Ltd. P'ship*, 645 F.3d 690, 694 (5th Cir. 2011).  If the evidence offered by both the moving and opposing parties supports only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, there are no genuine issues and summary judgment is appropriate. *Prof'l Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  Here, no issue of material fact exists.  Summary judgment is therefore appropriate.

**C.     DEFENDANTS ARE OBLIGATED TO INDEMNIFY EMC**

Defendants are obligated to indemnify EMC for all losses and expenses, including but not limited to costs, consultants' fees, and attorneys' fees, incurred by reason of having executed bonds on behalf of JVV and in enforcing the terms of the GAI.  The general rules of contract interpretation apply to indemnity agreements. *United States Fid. & Guar. Co. v.*

*E. L. Habetz Builders, Inc.*, No. 06-895, 2008 U.S. Dist. LEXIS 29985, at *20 (W.D. La. Mar. 28, 2008) (citing *Sovereign Ins. Co. v. Tex. Pipe Line Co.*, 488 So.2d 982, 984 (La. 1986)). Under Louisiana law, contracts have the effect of law between the parties and, in the absence of ambiguity, are enforced as written. *Lifemark Hosps., Inc. v. Liljeberg Enters.*, 304 F.3d 410, 439-40 (5th Cir. 2002). Contracts, including indemnity agreements, that authorize the recovery of attorneys' fees are valid and enforceable. *Huddleston v. Bossier Bank & Trust Co.*, 475 So. 2d 1082, 1085 (La. 1985); *Gen. Motors Acceptance Corp. v. Meyers*, 385 So. 2d 245, 247 (La. 1980); *see also U.S. Fid. & Guar. v. Diggs*, No. 03-1023, 2004 U.S. Dist. LEXIS 43, at *11-12 (E.D. La. Jan. 5, 2004)[66]; *U.S. Fid. & Guar. v. Primelink Sys., Inc.*, No. 02-2629, 2003 U.S. Dist. LEXIS 12766 (E.D. La. July 18, 2003).[67]

The language of the GAI is clear and unambiguous, and EMC is entitled to enforcement of its terms as written. Defendants clearly obligated themselves to indemnify EMC for all losses and expenses, including but not limited to costs, attorneys' fees, and consultants' fees, incurred by EMC by reason of having executed bonds on behalf of JVV. Defendants also obligated themselves to indemnify EMC for all losses and expenses, including but not limited to costs, attorneys' fees, and consultants' fees, incurred in enforcing

---

[66] The applicable provision enforced in *Diggs* required the indemnitors to "indemnify the surety and hold it harmless from and against all 'liability, losses, costs, damages, attorneys' fees, disbursements and expenses of every nature' incurred by paying claims on the bonds or by bringing an action to enforce the agreement." *Diggs*, No. 03-1023, 2004 U.S. Dist. LEXIS 43, at *4.

[67] The court in *Primelink Systems* found that, in addition to losses sustained, the principal owed its surety attorneys' fees and costs based on the requirements of the applicable indemnity agreements.

Defendants' obligations under the GAI.  As of December 13, 2011, EMC has incurred losses and expenses totaling $1,820,338.39, calculated as follows:

|   |   | $1,799,831.29 | EMC's  payment and performance bond losses |
|---|---|---|---|
| + | $ | 429,860.40 | EMC's expenses, consultants fees, and attorneys' fees |
| - | $ | 409,353.30 | Amounts recovered from available contract balances |
| = |   | $1,820,338.39 | Total |

Thus, pursuant to the GAI, Defendants are liable jointly, severally, and *in solido* to EMC in the amount of $1,820,338.39.  As EMC anticipates further losses and expenses by reason of having executed bonds on behalf of JVV and in enforcing the GAI, EMC is further entitled to a reservation of its right to seek all additional losses and expenses incurred by reason of having executed the bonds on behalf of JVV and in enforcing Defendants' obligations under the GAI.

### D.    DEFENDANTS ARE OBLIGATED TO POST COLLATERAL

Defendants are also obligated to post collateral with EMC to secure EMC from any potential losses incurred by reason of having executed the bonds on behalf of JVV. Louisiana Civil Code Article 1986 provides that "[u]pon an obligor's failure to perform an obligation to deliver a thing, . . . the court shall grant specific performance plus damages for delay if the obligee so demands."  La.C.C. art. 1986.  The remedy of specific performance for breach of contract is favored under Louisiana law.  *Diggs*, No. 03-1023, 2004 U.S. Dist. LEXIS 43, at *4;  *J. Weingarten, Inc. v. Northgate Mall, Inc.*, 404 So. 2d 896, 900-01 (La. 1981).  An obligee is not required to show the inadequacy of damages or irreparable injury before seeking specific performance.  *J. Weingarten*, 404 So. 2d at 900.  The GAI clearly and

plainly describes the obligations Defendants undertook.  Under the GAI, if for any reason EMC sets a reserve, Defendants must provide EMC with cash or collateral in the amount of such reserve within ten days of demand by EMC.

EMC is also entitled to security from JVV, its principal obligor, pursuant to Louisiana Civil Code article 3053.  Under this article, a surety may demand security from a principal obligor to guarantee reimbursement when:

> (1) The surety is sued by the creditor; (2) The principal obligor is insolvent, unless the principal obligation is such that its performance does not require his solvency; (3) The principal obligor fails to perform an act promised in return for the suretyship; or (4) The principal obligation is due or would be due but for an extension of its term not consented to by the surety.

Under Louisiana Civil Code article 3054, a principal must provide the requested security within ten days of the delivery of a written demand, after which time the surety can bring an action against the principal obligor.  EMC is entitled to security under article 3053 because: (1) EMC has been sued under the bonds it executed on behalf of JVV, (2) JVV has failed to comply with the terms of the GAI, under which it made certain promises in return for suretyship, and (3) it is clear that claims are owned under the bonds EMC executed on behalf of JVV.

EMC made its demand for collateral security in the amount of $470,284.38 by certified letters dated November 19, 2010.  Defendants ignored EMC's demand letter, failing to comply with the mandates of the GAI and the Louisiana Civil Code.  Due to Defendants' failure, EMC is entitled to specific performance of the terms of the GAI and to be

immediately placed with collateral security by Defendants in the amount of $470,284.38.

### E.   EMC IS ENTITLED TO ITS FUTURE LOSSES AND EXPENSES

EMC continues to incur losses and expenses by reason of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under the GAI.  EMC is therefore entitled to a reservation of its right to seek all such future losses and expenses.

### IV.   <u>CONCLUSION</u>

Summary judgment is appropriate when there is no dispute as to any material fact, and the mover is entitled to judgment as a matter of law.  Because this matter is pending in Louisiana, Louisiana substantive law applies.  Under Louisiana law, indemnity agreements are enforced as written, and specific performance is the preferred remedy.  EMC and Defendants executed a valid and enforceable indemnity agreement, the GAI, which obligated Defendants to indemnify EMC jointly, severally, and *in solido* for all losses and expenses incurred by reason of having executed bonds on behalf of JVV and in enforcing the terms of the GAI.  This includes, but is not limited to, costs, expenses, consultants' fees, and attorneys' fees.  Defendants further obligated themselves to place EMC in collateral security, upon demand by EMC, in the amount of any reserve set by EMC, and have failed to do so after demand was made.  As of December 13, 2011, EMC has sustained net losses of $1,820,338.39 by reason of having executed the payment and performance bonds on behalf of JVV and in enforcing Defendants' indemnity obligations.

For these reasons, no genuine issue of material fact exists, and EMC is entitled to

judgment as a matter of law: (1) in its favor and against Defendants, jointly, severally, and *in solido*, in the amount of $1,820,338.39, representing EMC's net losses and expenses incurred as of December 13, 2011 by reason of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under the indemnity agreement; (2) ordering Defendants to specifically perform their collateral security obligations under the indemnity agreement by placing EMC in funds equal to $470,284.38 as collateral security; (3) finding that EMC's losses were the result of its reasonable reliance on the materially false, written representations made by defendants Anthony Vigilotti and Tennille Vigilotti concerning their financial condition; and (4) reserving EMC's right to seek all additional losses and expenses, including but not limited to all costs, consultants' fees, and attorneys' fees, incurred by EMC by reason of having executed bonds on behalf of JVV and in enforcing Defendants' obligations under the indemnity agreement.

KREBS, FARLEY & PELLETERI, P.L.L.C.

*/s/ Christopher J. Weema*
MAURA Z. PELLETERI (La. Bar No. 8463)
CHARLES B. LONG (La. Bar No. 22824)
CHRISTOPHER J. WEEMA (La. Bar. No. 33427)
400 Poydras Street, Suite 2500
New Orleans, LA  70130
Telephone:   504-299-3570
Facsimile:   504-299-3582
E-mail:      mpelleteri@kfplaw.com
E-mail:      clong@kfplaw.com
E-mail:      cweema@kfplaw.com

ATTORNEYS FOR EMPLOYERS
MUTUAL CASUALTY COMPANY

21

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of January, 2012, a copy of the foregoing was sent via U.S. Mail, postage pre-paid and certified, to the following at their address of record and/or last known address pursuant to Federal Rule of Civil Procedure 5(b)(2)(C):

JVV Consulting-Construction Management, L.L.C.
through Anthony R. Vigilotti
500 Bedford Street
Stamford, CT 06901

Anthony R. Vigilotti
500 Bedford Street
Stamford, CT 06901

Tennille P. Vigilotti
500 Bedford Street     and     184 Forest Road
Stamford, CT 06901              Southbury, CT 06488

I hereby certify that on the 9th day of January, 2012, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will provide the Clerk of Court copies of the foregoing for all defendants pursuant to Federal Rule of Civil Procedure 5(b)(2)(D).

                                     */s/ Christopher J. Weema*
                                     CHRISTOPHER J. WEEMA
                                     La. Bar No. 33427
                                     Attorney for Plaintiff
                                     Employers Mutual Casualty Company
                                     400 Poydras Street, Suite 2500
                                     New Orleans, LA  70130
                                     Telephone:   504-299-3570
                                     Facsimile:   504-299-3582
                                     E-mail:       cweema@kfplaw.com