UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

EMPLOYERS MUTUAL CASUALTY
COMPANY

VERSUS

JVV CONSULTING-CONSTRUCTION
MANAGEMENT, L.L.C.,
ANTHONY R. VIGILOTTI, and
TENNILLE P. VIGILOTTI

CIVIL ACTION

NO. 11-79-JJB

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is a motion for summary judgment (Doc. 45) filed by plaintiff Employers Mutual Casualty Company against defendants JVV Consulting-Construction Management, L.L.C. ("JVV"), Anthony R. Vigilotti, and Tennille P. Vigilotti (collectively, "defendants"). Oral argument is unnecessary. The Court has jurisdiction over this case under 28 U.S.C. § 1332.

**I.**

This case involves claims for money damages based on an alleged breach of an indemnity agreement by the defendants. Plaintiff is a surety company that issues payment and performance bonds and stands as surety for select contractors. Defendants were contractors in the business of performing construction work, and in order to submit bids and perform work on projects, they were required to obtain payment and performance bonds. Thus, defendants requested that plaintiff execute certain payment and performance bonds as surety with defendants as the principal.

1

On or about June 26, 2009, plaintiff and defendants entered into a General Agreement of Indemnity ("GAI") in favor of plaintiff, and by executing the GAI, the defendants agreed to be bound by its terms jointly and severally. (Indemnity Agreement, Doc. 45-3). The relevant provisions of the GAI states that the defendants:

> shall exonerate, indemnify, and keep indemnified [plaintiff] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to interest, court costs and counsel fees) and from and against any and all such losses and/or expenses which [plaintiff] may sustain and incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principal or the Undersigned to perform or comply with the covenants and conditions of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement.

(*Id.*, p. 1, § 2). The GAI also states:

> If for any reason [plaintiff] shall be required or at its option and in its sole discretion shall deem it necessary to set up a reserve in any amount … the [defendants], within 10 calendar days after mailing by [plaintiff] of written demand by registered or certified mail shall deposit with [plaintiff], cash or collateral in the amount of such reserve and every increase thereof, to be held by [plaintiff] as collateral with the right to use any such funds or any part thereof, at any time, without notice to the [defendants] in payment or compromise of any judgment, claim, liability, loss, damage, attorneys' fees, engineers' fees, investigative charges and other disbursements and/or expenses in connection with said Bond or Bonds or in anticipation of loss thereunder.

(*Id.*, p. 3, § 11).

Defendant subsequently obtained contracts for several construction projects, including: 1) Plaquemine High School New Field House; 2) Plaquemine High School Administration and Gym Renovations; 3) Zachary High School New Drives and Parking; 4) Gray's Creek Elementary Multi-Purpose Building; 5) New Fire Station No. 10; and 6) The LTC-Ascension Campus Project. (Statement of Uncontested Facts, Doc. 45-18, pp. 4-15). Plaintiff alleges that it had to satisfy payment and performance bond claims for several reasons, including, but not limited to, termination of defendant from projects by its clients. (*Id.*).

Defendants Anthony Vigilotti and Tennille Vigilotti provided plaintiff with a document entitled "Confidential Personal Financial Statement," making certain representations concerning the Vigilottis' personal financial conditions in order to induce plaintiff to execute payment and performance bonds on defendants' behalf. (Confidential Personal Financial Statement, Doc. 45-4). The single largest asset was real estate valued at $320,000.00, which Anthony Vigilotti and Tennille Vigilotti claimed to own. However, this property was actually owned by Ralph Vigilotti, defendant Anthony Vigilotti's father. (Act of Sale, Docs. 45-12 and 45-13). Plaintiff alleges that it relied on the Vigilottis' misrepresentations in deciding to execute bonds on behalf of JVV. (Statement of Uncontested Facts, Doc. 45-18, at 6).

On September 19, 2011, defendants' counsel in this case withdrew and defendants have not added substitute counsel. (Doc. 28).

3

Plaintiff has moved for summary judgment (Doc. 45), arguing that the defendants have failed to perform their obligations under the indemnity agreement and plaintiff is entitled to judgment on the following:

1) In the amount of $1,820,338.39 against defendants, jointly, severally, and *in solido*, representing plaintiff's net losses and expenses incurred as of December 13, 2011 by reason of having executed bonds on behalf of JVV and in enforcing defendants' obligations under the indemnity agreement. (Affidavit, Doc. 45-2, p. 12).

2) Ordering defendants to specifically perform and satisfy their collateral security obligation of $470,284.38 under the indemnity agreement. (Indemnity Agreement, Doc. 45-3, § 11, p. 3).

3) Finding that plaintiff's losses were the result of its reasonable reliance on the materially false, written representations made by defendants Anthony Vigilotti and Tennille Vigilotti concerning their financial condition. (Statement of Uncontested Facts, Doc. 45-18 at 6).

4) Reserving plaintiff's right to seek all additional losses and expenses, including but not limited to all costs, consultants' fees, and attorneys' fees, incurred by plaintiff by reason of having executed bonds on behalf of JVV and in enforcing defendants' obligations under the indemnity agreement.

4

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. Rule Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. Rule Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991), *cert. denied*, 507 U.S. 1051. If, once the non-moving party has

Case 3:11-cv-00079-JJB -CN    Document 50    03/26/12    Page 5 of 9

been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322.

**III.**

Local Rule 11.1 states that "[e]ach attorney and *pro se* litigant has a continuing obligation to apprize [sic] court of any address change."[1] Because the defendants have failed to uphold this obligation to this Court, notices to the defendants on motion for summary judgment that were mailed informing them of the January 30, 2012 deadline for the opposition were returned as undeliverable. (*See* Docs. 47-49). The Court therefore treats this motion as unopposed and resorts to the evidence furnished by plaintiff to determine whether those undisputed facts entitle it to judgment as a matter of law.

As stated in the indemnity agreement, (Doc. 45-3, p. 1, § 2), an itemized statement by the plaintiff shall be prima facie evidence of the liabilities owed by defendants. As there is no rebuttal, the court proceeds with the facts asserted in the affidavit submitted by Linda Hoffmann and plaintiff's statement of undisputed facts as conclusive. (*See* Hoffman Affidavit, Doc. 45-2; Statement of Undisputed Facts, Doc. 45-18). Therefore, the net losses and expenses, as itemized by plaintiff, incurred because of the execution of the performance bonds totals $1,820,338.39, including $429,860.40 in costs, attorneys' fees, and consultants'

---

[1] Modern dictionaries show this spelling to be an obsolete form of "appraise." The world should be "apprise."

Case 3:11-cv-00079-JJB -CN    Document 50    03/26/12    Page 6 of 9

fees less the $409,353.30 recovered from available contract balances. (*See, e.g.,* Doc. 45-18, ¶¶ 64, 67).

Local Rule 56.2 states that "[a]ll material facts set forth in the statement [of undisputed facts] will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Like the Hoffman affidavit, (Doc. 45-2), plaintiff submitted its statement of undisputed facts which contains the itemization and documentation necessary to show entitlement to relief. (*See* Doc. 45-18). Defendants filed no opposition to plaintiff's motion for summary judgment and have offered no evidence establishing the presence of a genuine dispute by the January 30, 2012, deadline set forth by this Court. (Order, Doc. 46). Therefore, the unambiguous terms of the indemnity agreement, coupled with the submitted proof of sums owed, entitles plaintiff to a judgment in the amount of $1,820,338.39.

Moreover, under the indemnity agreement, plaintiff had a right to demand defendants deposit a reserve amount to cover amounts determined by plaintiff in its sole discretion necessary to cover any judgment, claim, loss, or other fee sustained by plaintiff in the performance of the bonds. (Doc. 45-3, p. 3, § 11). The cash or collateral demanded by plaintiff in the amount of $470,284.38 was not posted within the 10 days required by the agreement. Under the provisions of La. C.C. arts. 3053-54, surety companies have the right to sue 10 days after a principal's failure to perform an act within the scope of the suretyship that is

7

currently due and owing. Under the provision of La. C.C. art. 1986, plaintiff is entitled to specific performance. Thus, defendants owe plaintiff specific performance to tender cash or collateral security valued at $470,284.38.

These losses resulted from the false written representations defendants made to plaintiff regarding their financial condition. Defendants falsified the amount of collateral security they owed, which fraudulently induced plaintiff to execute as surety the construction bonds for which they have been forced to pay. (*Compare* Doc. 45-4 (showing the Vigilottis owned $320,000 in real estate) *with* Docs. 45-12 and 45-13 (showing Ralph Vigilotti, defendant Anthony Vigilotti's father, actually owned and subsequently transferred the real estate in question)).

Finally, because plaintiff is entitled to summary judgment and its expenses and losses may yet be ongoing, plaintiff shall be permitted to seek additional losses and expenses incurred as a result of executing the bonds, performing its obligations thereunder, and enforcing the terms of the indemnity agreement against defendants.

Thus, because (1) plaintiff has introduced competent, unrebutted summary judgment evidence showing undisputed facts which entitle it to judgment as a matter of law, and (2) defendants failed to apprise the Court of any address change, resulting in their conscious non-opposition to this motion, the Court concludes that plaintiff's motion for summary judgment should be granted.

## IV. Conclusion; Order

Accordingly, it is ORDERED plaintiff's unopposed motion for summary judgment (Doc. 45) is hereby GRANTED in full.

Plaintiff shall submit a form of judgment.

Signed in Baton Rouge, Louisiana, on March 26, 2012.

      **JAMES J. BRADY, DISTRICT JUDGE**
      **MIDDLE DISTRICT OF LOUISIANA**